IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)  HOWARD "HOWIE" HAWKINS, | ) | |
| Candidate for President of the United States; | ) | |
| (2)  AARON JAMES WENGER, | ) | |
| (3)  JOHN EDWARD KENNY, | ) | |
| (4)  KIMBERLY DAWN KENNY, | ) | |
| (5)  HARRISON DAVID TAYLOR, | ) | |
| (6)  MAIGAN UNDERWOOD, | ) | |
| (7)  JAMES M. BRANUM, and | ) | Case No.   CIV-20-687-D |
| (8)  NICHOLAS HANS-JOSEF FRIMBERGER, | ) | |
| .....Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| (1) PAUL ZIRIAX, in his official capacity as | ) | |
| Secretary of the Oklahoma State Election Board, | ) | |
| ..... Defendant. | ) | |

## C O M P L A I N T

COME now the Plaintiffs, and for their cause of action, and allege and state as follows, to-wit:

## PARTIES

I.

Plaintiff HOWARD "HOWIE" HAWKINS is a resident of the State of New York, and the Green Party nominee for the office of President of the United States.

Plaintiffs AARON JAMES WENGER, JOHN EDWARD KENNY, KIMBERLY DAWN KENNY, HARRISON DAVID TAYLOR, MAIGAN UNDERWOOD, JAMES M. BRANUM, and NICHOLAS HANS-JOSEF FRIMBERGER are residents and

registered voters in the State of Oklahoma, and desire to vote for Plaintiff HOWARD "HOWIE" HAWKINS in the 2020 general election for President of the United States.

That the Plaintiff HOWARD "HOWIE" HAWKINS (hereinafter referred to as "Hawkins") has seven Oklahoma registered voters who are willing to serve as presidential electors for HAWKINS for President, as required by Okla. Stat., tit. 26, § 10-101.1(A)(3) and will subscribe to the oath required in the aforesaid statute.

II.

Defendant PAUL ZIRIAX is the Secretary of the Oklahoma State Election Board (hereinafter referred to as Board), which is a state agency and body politic organized under the laws of the State of Oklahoma, viz.: Okla. Stat. tit. 26, § 2-101, *et seq.*, to operate and perform such duties as are prescribed by law for the purposes of overseeing elections conducted in the State of Oklahoma.  The aforesaid Defendant Paul Ziriax has offices in the State Capitol Building in Oklahoma City, Oklahoma.

JURISDICTION AND VENUE

III.

This is an action for declaratory and injunctive relief.  The jurisdiction of this Court is invoked pursuant to Title 28, United States Code, § 1343(3), (4), 2201, and 2202, and Title 42, United States Code, § 1983.  Venue of this Court is invoked pursuant to Title 28, United States Code, § 1391.  The rights, privileges, and immunities sought to be declared and redressed are those secured by the First and Fourteenth Amendments to the United States Constitution.

IV.

This proceeding seeks a judgment declaring Okla. Stat. tit. 26, §§ 5-112 and 10-101.1, as applied herein to the Plaintiffs for the 2020 Oklahoma General Election and all subsequent General Elections in the State of Oklahoma and the facts and circumstances relating thereto, unconstitutional in that they violate in their application to the Plaintiffs herein for the 2020 Oklahoma General Election, and all subsequent Oklahoma General Elections, the First and Fourteenth Amendments to the United States Constitution and Title 42, United States Code, § 1983, by requiring an unnecessarily early petition filing deadline for Presidential candidates of non-recognized political parties in Oklahoma, and unnecessarily high petition signature requirement, and denying Plaintiffs the equal protection of the law and discriminating in favor of Independent non-presidential candidates for statewide federal office, i.e., U.S. Senator, by allowing Independent candidates for U.S. Senator for Oklahoma to pay a filing fee of Two Thousand Dollars, but requiring, in effect, a Thirty-five Thousand Dollar filing fee for unrecognized political party candidates for President of the United States, thus, creating a discriminatory treatment within a class of candidates (viz.: Independent candidates for statewide Federal office as opposed to non-recognized political party candidates for President of the United States) without a constitutionally compelling interest or rational basis by the State to justify such disparate and unequal treatment, even though the State of Oklahoma has a lesser interest in regulating Presidential elections than non-presidential elections. This proceeding also seeks an injunction, both temporary and permanent, against Secretary, Paul Ziriax, Defendant above-styled, and his agents and

employees, prohibiting said Defendant from following and enforcing the provisions of

Okla. Stat. tit. 26, §§ 5-112 and 10-101.1, as applied to the Plaintiffs herein for the 2020

Oklahoma General Election, and all subsequent Oklahoma General Elections, so as to

serve to prevent the listing on the Oklahoma ballot of Plaintiff HAWKINS as the Green

Party candidate for President of the United States.

<u>ELECTION STATUTES IN QUESTION</u>

V.

The laws in question which were stated in rhetorical paragraph IV above are, in

pertinent part, as follows, to-wit:

Okla. Stat., tit. 26, § 5-112,

A. A declaration of candidacy must be accompanied by:

1. A petition supporting a candidate's filing signed by not fewer than two percent (2%) of
the number of registered voters in the district, county or state, as appropriate for the
office sought; or

2. A cashier's check or certified check as follows:

a. for candidates for Governor, Two Thousand Dollars ($2,000.00),

b. for candidates for United States Senator, Two Thousand Dollars ($2,000.00),

c. for candidates for United States Congress, One Thousand Dollars ($1,000.00),

d. for candidates for Lieutenant Governor, Corporation Commission, Attorney General,
State Auditor and Inspector, State Superintendent of Public Instruction, State Treasurer,
Commissioner of Insurance and Commissioner of Labor, One Thousand Dollars
($1,000.00),

\* \* \* \*

B. A filing fee received by the Secretary of the State Election Board shall be deposited in
the State Election Board Revolving Fund created pursuant to <u>Section 3-107</u> of this title. A

filing fee received by a secretary of a county election board shall be deposited in the County Election Board Special Depository Account authorized by Section 3-108 of this title.

Okla. Stat., tit. 26, § 10-101.1,

A. The following procedure shall be observed for Presidential Electors pledged to an independent candidate for President of the United States:

1. A person wishing to appear on the General Election ballot as an independent candidate for President of the United States shall file a Statement of Candidacy with the Secretary of the State Election Board no later than July 15 of a presidential election year;

2. a. the Statement of Candidacy shall be in a form to be prescribed by the Secretary of the State Election Board, and shall include the candidate's full legal name, the candidate's address of residence, the candidate's mailing address, the name of the candidate as it should appear on the ballot and any other information required by the Secretary of the State Election Board,

b. the candidate shall swear an oath or affirm on the Statement of Candidacy that the candidate meets the qualifications for President of the United States set forth in the Constitution of the United States, and the candidate's signature shall be witnessed by a notary public;

3. The Statement of Candidacy shall be accompanied by a certification of the name and address of residence for each candidate for Presidential Elector pledged to the independent candidate for President of the United States. The number of electors so certified shall be equal to the number apportioned to the State of Oklahoma pursuant to the provisions of Section 1 of Article II of the United States Constitution. Each candidate for Presidential Elector so nominated shall subscribe to an oath prescribed by the Secretary of the State Election Board, which shall be in the same manner, substance and form as the oath described in Section 10-102 of this title;

4. a. the Statement of Candidacy shall be accompanied by a petition supporting a candidate's filing,

b. the form of the petition shall be prescribed by the Secretary of the State Election Board. Each page of the petition must contain the names of registered voters from a single county,

c. the petition shall bear the same number of signatures of registered voters that is required to form a recognized political party as described in Section 1-108 of this title,

d. within thirty (30) days after receipt of the petition, the Secretary of the State Election Board shall determine the sufficiency of the petition,

e. in lieu of the petition required by this subsection, a filing fee for each Presidential Elector committed to the independent candidate for President of the United States may be submitted in the form of a cashier's check or certified check made payable to the Secretary of the State Election Board. The filing fee for each Presidential Elector shall be in an amount equal to the filing fee described in Section 20-102 of this title. The sum of the filing fees for each Presidential Elector may be paid in a single cashier's check or certified check. The filing fees shall be deposited in the State Election Board Revolving Fund created pursuant to Section 3-107 of this title; and

5. If the requirements set forth in this section are found by the Secretary of the State Election Board to be sufficient, then the independent candidate for President of the United States shall be qualified to appear on the General Election ballot. The candidate shall certify to the Secretary of the State Election Board the name of the candidate's Vice Presidential running mate no later than the deadline established in Section 10-101 of this title for the certification by a recognized political party of its nominee for Vice President of the United States.

B. A political party not recognized under the laws of the State of Oklahoma may place its nominees for President of the United States, Vice President of the United States and Presidential Electors on the ballot subject to the same requirements, restrictions and deadlines as provided for an independent candidate for President of the United States. Provided, the national chair of the unrecognized political party shall submit the Statement of Candidacy on behalf of the unrecognized political party, and shall provide the Secretary of the State Election Board with a separate certificate of nomination for the unrecognized political party's nominees for President and Vice President of the United States, in a form and manner prescribed by the Secretary of the State Election Board.

## FACTS

### VI.

That, while Okla. Stat. tit. 26, §§ 10-101.1 provides a means through petitioning for Independent and nonrecognized political party candidates for President and Vice President to appear on the ballot in Oklahoma as an Independent candidate or with the party label of an unrecognized political party, respectively, the petition signature deadline is unnecessarily early and before the deadline in 42 states and the District of Columbia.

Further, Okla. Stat. tit. 26, § 5-112 provides a means in lieu of petition signatures for

Independent candidates for statewide Federal office in Oklahoma, i.e., United States

Senator, to appear on the Oklahoma ballot by simply paying a fee by cashier's or certified

check of two thousand dollars ($2,000) and the filing of a Declaration of Candidacy with

the Secretary of the State Election Board, while the filing fee for Presidential candidates

is an unnecessary and unequal, in effect, Thirty-five Thousand Dollars ($35,000).

Additionally, all Independent candidates in Oklahoma, whether for a statewide federal

office or a statewide state office, since the adoption of the alternate options of paying a

filing fee or gathering petition signatures for the statewide federal office of United States

Senator or the statewide state office of Governor, or any other statewide state office, have

used the filing fee option for ballot access instead of the petition signature option for

ballot access of Okla. Stat. tit. 26, § 5-112, which was previously until August 27, 2010,

5 percent of the registered voters eligible to vote for a candidate in the first election

wherein the candidate's name could appear on the ballot until the Legislature lowered the

percentage to 4 percent effective August 27, 2010, and then lowered it further to 2

percent effective November 1, 2017.

VII.

In fact, while the Oklahoma ballot has been frozen in the status quo since the 1992

general election as to Presidential candidates obtaining ballot access status pursuant to

Okla. Stat. tit. 26, § 10-101.1 (with no presidential candidates who are independent or the

nominees of a non-recognized political party obtaining ballot status in Oklahoma),

Independent candidates for U.S. Senator have regularly appeared on the Oklahoma ballot

by simply paying a filing fee from 1992 through 2020, with anywhere from one to three

Independent U.S. Senate candidates being on the Oklahoma ballot in any general election

year in which a U.S. Senator is up for election in Oklahoma.  The filing fee for United

States Senator is Two Thousand Dollars, and the filing fee for the other aforesaid

statewide state offices is One Thousand Dollars, except for Governor, which is Two

Thousand Dollars.  However, there is a provision in the aforesaid Okla. Stat. tit. 26, § 10-

101.1(B) for a filing fee means of candidacy for a non-recognized party candidate in

Oklahoma for President and Vice President of the United States in the amount of Thirty-

five Thousand Dollars.

VIII.

Oklahoma has the most restrictive ballot access laws and filing fees for

presidential and vice-presidential candidates of Independent or non-recognized political

party status in the United States.  Most states having a requirement of less than one

percent (1 percent) of the previous vote for President or Governor, while the only two

other states which have a filing fee for presidential candidates are Colorado and

Louisiana, where the filing fees are One Thousand Dollars and Five Hundred Dollars,

respectively.  Because of the relatively stringent ballot access laws in Oklahoma and the

immense task of obtaining ballot status throughout the United States for a Presidential

candidate in 2020, particularly because of the COVID-19 pandemic, the supporters of

HAWKINS in Oklahoma were unable to marshal their resources in such a manner as to

conduct a successful petition drive in Oklahoma pursuant to Okla. Stat. tit. 26, §§ 10-

101.1, and also achieve ballot status in the other States and the District of Columbia at

present. Therefore, as stated hereinabove, the supporters of HAWKINS in Oklahoma,

respectively, are willing to forward Declarations of Candidacy on behalf of the Plaintiff

HOWARD HAWKINS as the Green Party candidate for President of the United States,

along with certified checks in the amount of Two Thousand Dollars, or such sum as the

Court should direct, to the Defendant PAUL ZIRIAX, Secretary of the Board.

IX.

The Oklahoma ballot access law of Okla. Stat. tit. 26, § 1-101.1, as such applies to

a presidential and vice-presidential candidate of a non-recognized political party under

the laws of the State of Oklahoma and their presidential electors, sets an unconstitutional

early deadline of July 15th in presidential election years and requires an unnecessarily

high percentage of petition signatures. Said July 15th deadline is before the dates of the

conventions of the major political parties.

X.

In the year 2020, the Democratic Party will nominate its presidential and vice-

presidential candidates during its national convention from August 17 through August 20,

2020. The Republican Party will nominate its presidential and vice-presidential

candidates during its national convention from August 24 through August 27, 2020.

Plaintiff HAWKINS received the Green Party nomination for President of the United

States and Angela Walker of South Carolina received the Green Party's nomination for

Vice President of the United States at the Green Party's national convention on July 11,

2020. The Defendant herein will not require the aforesaid nominees of the Democratic

and Republican parties to present any nominating petition indicating their support in

9

Oklahoma because said nominees of the Democratic and Republican parties for President and Vice President are for parties already recognized in the State of Oklahoma.  In contrast, Presidential candidates of non-recognized political parties in Oklahoma must submit petition signatures by July 15 of a presidential election year in the amount of three percent of the number of total voters in the last gubernatorial election for the presidential election to be conducted in Oklahoma in the year 2020, or pay a filing fee of Thirty-five Thousand Dollars.

## XI.

So restrictive, severe, and discriminative is Oklahoma's ballot access law for Presidential candidates who are the nominee of a political party not recognized in the State of Oklahoma, that even a prominent Presidential candidate such as Ralph Nader failed to appear on the Oklahoma Presidential ballot in 1996, 2000, and 2004.  In fact, in 2004, 2008, and 2012, Oklahoma was the only State in which there were only two candidates on the ballot for President of the United States.  In the aforesaid Presidential elections in Oklahoma in 2004, 2008, 2012, and 2020, even the nominee for President of the United States of the Democratic Party failed to carry any of the 77 counties of Oklahoma.  In the most recent Presidential elections in Oklahoma of 2012 and 2016, the Democratic candidate for President of the United States (President Barack Obama in 2012 and Hillary Clinton in 2016) lost every single county in Oklahoma by landslide proportions—viz:, a 10 percent margin or more.

XII.

As a demonstration of how much Oklahoma's ballot access laws for Presidential

candidates maintain the status quo and stifle First Amendment rights, Okla. Stat. tit. 26, §

10-101.1 in its several forms has not been successfully complied with since 1992.  While

no political party had been able to obtain ballot recognition in Oklahoma, pursuant to

Okla. Stat., tit. 26, § 1-108, since the 2000 Presidential election through 2015, and

because previous election law changes had moved the deadline for filing political party

recognition petitions from May 31 of the general election year to March 1st of the general

election year, Oklahoma lowered the petition signature requirement in 2015 from 5

percent of the last gubernatorial or presidential vote to 3 percent of the last gubernatorial

vote.  In 2016, Oklahoma lowered the political party retention requirement of Okla. Stat.,

tit. 26, § 1-109 from 10 percent of the last gubernatorial or presidential election vote to

2 ½ percent of the vote for any statewide office, and allowed for the Presidential electors

of Presidential candidates in Oklahoma not to have their names printed on the Oklahoma

ballot.  Despite these changes, only the Libertarian Party was able to comply with the

new requirements of Okla. Stat., tit. 26, § 1-108 for the general election of 2016.

XIII.

The early filing deadline, combined with Oklahoma's absolute ban on write-in

voting, the unnecessary and burdensome signature requirement, and the high filing fee

alternative for presidential and vice presidential candidates operates to exclude candidates

whose prominence grows out of reactions to the events of the major party's primary

season and changing political developments, and who lack a recognized political party

11

organizational structure by the State of Oklahoma. Only candidates who rely on paid

petitioners can collect a significant number of signatures by the July 15th presidential

deadline (e.g., Ross Perot and 1992). No previous alternative presidential candidates

have been able to appear on the Oklahoma ballot without a substantial expenditure of

money for paid petitioners. Such monetary expenditures in order to meet petition

signature deadlines in Oklahoma operate to deny Oklahoma voters an opportunity to vote

for late emerging candidates who have significant public support but lack a recognized

political party organization or extensive financial resources.

XIV.

The early petition signature deadline in Oklahoma for non-recognized political

party Presidential candidates, coupled with Oklahoma's absolute ban on write-in voting

and the significant signature requirement—in contrast to the relatively reasonable and

less restrictive requirements of other states for candidates for President and Vice

President of the United States seeking ballot access—forces a non-recognized political

party Presidential candidate to demonstrate substantial support before the major political

parties have named their nominees or formally adopted their platform, at a time when

many serious alternative candidates for President are still in their formative stage, and

when it is unlikely that potential supporters have developed into a fully cohesive and

identifiable group. Because of the aforesaid hardships, and particularly during this time

involving the negative impacts of the COVID-19 pandemic on petition gathering,

Oklahoma's early presidential deadline, as set forth in Okla. Stat. tit. 26, § 10-101.1,

effectively cuts off serious and important candidates from appearing on the Oklahoma

ballot and transforms the petitioning process from a way to demonstrate popular support into a race to meet an arbitrarily and unnecessarily early deadline. At present, Oklahoma's deadline for Independent and non-recognized political party presidential candidates is one of the earliest in the United States. Forty-two states and the District of Columbia have presidential petition deadlines in either late July, August, September, or later of a General Election year. Oklahoma's early aforesaid presidential deadline places an undue, unreasonable, unjustified, and severe burden on unrecognized political party and Independent presidential candidates. The Defendants lack any compelling interest in the aforesaid presidential deadline in Oklahoma as it applies to presidential candidates, which requires a presidential candidate of a non-recognized Oklahoma political party to file his or her petitions for ballot access well before the nominating conventions of the two major political parties.

XV.

On information and belief, Plaintiff HAWKINS asserts that absent intervention by this Court, HOWARD HAWKINS will not be on the ballot in Oklahoma as candidate for President of the United States in the year 2020.

XVI.

Oklahoma, pursuant to Okla. Stat. tit. 26, § 7-127(1), is one of only five States which completely bans write-in voting, while South Carolina bans write-in voting only in Presidential elections.

13

XVII.

Defendant Secretary Paul Ziriax has and will exercise his authority under color of state law in enforcing the aforesaid State laws set forth in rhetorical paragraph V above, as applied to the Plaintiffs herein for the 2020 Oklahoma General Election, and the facts and circumstances relating thereto, in such a manner as to be in an unlawful, discriminatory, unequal, capricious, and arbitrary manner, in violation of the First and Fourteenth Amendments to the United States Constitution, and Title 42, United States Code, § 1983, in that:

Okla. Stat. tit. 26, §§ 5-112 and 10-101.1, as applied to the Plaintiffs herein for the 2020 Oklahoma General Election and all subsequent General Elections in Oklahoma, and the facts and circumstances relating thereto, are illegal and unconstitutional, in that they violate the rights of the Plaintiffs under the First and Fourteenth Amendments to the United States Constitution, and Title 42, United States Code, § 1983, in that the aforesaid statutes are discriminatory, unequal, unduly severe, and not framed in the least restrictive manner necessary to achieve the legitimate State interests in regulating ballot access for a Presidential election, particularly as relating to the fact that non-presidential statewide federal offices only require a filing fee of Two Thousand Dollars—as opposed to a Thirty-five Thousand Dollar filing fee for a candidate of a non-recognized political party for President of the United States—and, further, as applied to non-recognized political party Presidential candidates, Oklahoma's early signature deadline, combined with Oklahoma's absolute ban on write-in voting, the significant signature requirement, and other particular circumstances therein, establishes severe, discriminatory, unreasonable,

14

and an undue burden on non-recognized political party candidates for President of the United States seeking ballot access in Oklahoma.

XVIII.

The consequences of the aforesaid lack of a reasonable and equal filing fee for a non-recognized political party presidential candidate, while providing a reasonable filing fee for U.S. Senator, an absolute ban on write-in voting, relatively high petition signature requirement, the relatively early and unnecessary petition deadline, and the continued lack of success and freezing of the status quo as to obtaining ballot access for non-recognized political party presidential candidates as opposed to the continuing success of Independent U.S. Senate candidates in obtaining ballot access in Oklahoma by only using the filing fee option, all as complained of hereinabove, is that HOWARD HAWKINS will fail to qualify as a Presidential candidate for the General Election ballot for 2020 in Oklahoma and voters in Oklahoma will lose their choice to vote for him, thus, consigning some Oklahoma voters to the status quo of foregoing their vote or choosing between the Presidential and Vice Presidential candidates of the Republican, Libertarian, and Democratic parties. Additionally, because votes cast for President of the United States are done in the context of a national election, voters outside Oklahoma who cast their ballots for HOWARD HAWKINS will have their votes effectively diluted by the refusal of the Defendant to allow HOWARD HAWKINS on the Oklahoma General Election ballot for 2020.

XIX.

Plaintiffs herein, as a result and for the reasons set forth hereinabove, and the aforesaid State laws set forth in rhetorical paragraph V above, will suffer immediate and irreparable harm in the event that the aforesaid complained of election laws are followed for the year 2020 and subsequent years—thus, denying the aforesaid candidates for President and Vice-President a place on the Oklahoma Election ballot for 2020.  Plaintiffs will thus be denied their rights to actively engage in the exercise of their free speech, right to political association, petition the government, seek redress of grievances, political candidacy, and equal protection and due process of the laws of the United States of America.  Plaintiffs have no adequate remedy at law for the denial of their rights and the impairment of the Constitutional rights, privileges, and immunities enjoyed by citizens of the United States and the State of Oklahoma, and, unless a preliminary injunction and permanent injunction are granted, Plaintiffs will suffer great and irreparable harm.

WHEREFORE, Plaintiffs demand judgment:

1.  Declaring that Okla. Stat. tit. 26, §§ 5-112 and 10-101.1, as applied to the Plaintiffs herein for the 2020 Oklahoma General Election, and all subsequent Oklahoma General Elections, and the facts and circumstances relating thereto, are illegal and unconstitutional, in that they violate the rights of the Plaintiffs to equal protection under the First and Fourteenth Amendments to the United States Constitution, and Title 42, U.S.C. § 1983, in that the aforesaid statutes are discriminatory, unequal, unduly severe and burdensome, and not framed in the least restrictive manner necessary to achieve the legitimate State interests in regulating ballot access, particularly as relating to the fact that

alternatives of reasonable filing fees are available for the other statewide Federal office,

i.e., U.S. Senator, but not President and Vice President of the United States—where the

filing fee is Thirty-five Thousand Dollars, and, thus, creating a discriminatory and

unequal treatment within a class of candidates (viz.: Independent Federal candidates for

statewide office as opposed to candidates of non-recognized political parties in Oklahoma

for President of the United States) without a constitutionally compelling interest or

rational basis by the State to justify such disparate treatment; and the presidential filing

deadline is unconstitutionally and unnecessarily early as applied to non-recognized

political party presidential and vice presidential candidates in the State of Oklahoma.

2.  Entering preliminary and permanent injunctions restraining, prohibiting, and

enjoining the Defendant to the instant action, and all persons in active concert and

participation with him, from enforcing, applying, or implementing the aforesaid

complained of State Election laws as applied to the instant Plaintiffs for the year 2020

General Election, and all subsequent Oklahoma General Elections, and the facts and

circumstances relating thereto.

3.  Issuing such other injunctive relief as the Court deems necessary to the said

Defendant, and all persons in active concert and participation with him, ordering them

not to take any action that would deny the Plaintiffs who are citizens of the State of

Oklahoma, or any other persons so inclined, the right to cast their votes for HOWARD

HAWKINS for President of the United States, and ordering said Defendant to place the

name of HOWARD HAWKINS on the Oklahoma ballot for the General Election in

2020.

4.  Awarding Plaintiffs the reasonable costs and expenses of this action, including attorney's fees pursuant to the Civil Rights Attorney's Fees and Awards Act of 1976, 42 U.S.C. § 1988; and

5.  Granting Plaintiffs such other and further relief as to which they may be entitled and which the Court may deem equitable and just.

Dated this 15th day of July, 2020.

HOWARD HAWKINS,
Candidate for President of the
United States, et al., Plaintiffs

JAMES C. LINGER, OBA#5441
*Counsel for Plaintiffs*
1710 South Boston Avenue
Tulsa, OK 74119-4810
(918) 585-2797 Telephone
(918) 583-8283 Facsimile
bostonbarristers@tulsacoxmail.com